IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MALLINCKRODT INC. and LIEBEL-FLARSHEIM COMPANY, | ) ) ) | |
| Plaintiffs, | ) ) ) | Civil Action No. 1:09-cv-00228-JJF |
| E-Z-EM, INC., and ACIST MEDICAL SYSTEMS, INC., | ) ) ) ) | |
| Defendants. | ) ) ) | |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM <u>UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)</u>

**MORRIS JAMES LLP**
Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
500 Delaware Avenue
Suite 1500
Wilmington, Delaware 19801-1494
(302) 888-6800
rherrmann@morrisjames.com
mmatterer@morrisjames.com

**ALSTON & BIRD LLP**
Philippe Bennett
90 Park Avenue
New York, New York 10016
(212) 210-9400
philippe.bennett@alston.com

*Attorneys for Defendants E-Z-EM, Inc. and ACIST Medical Systems, Inc.*

May 21, 2009

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................ii

I.  INTRODUCTION ............................................................................................................. 1

II. LEGAL ANALYSIS ......................................................................................................... 2

A.  The Complaint is Not Grounded in Fact............................................................. 3

B.  The Complaint Fails to Allege Necessary Elements of Each Patent
Infringement Claim............................................................................................. 5

1.  Direct Patent Infringement Claim................................................................. 5

C.  Claim for Inducing Infringement ........................................................................ 9

D.  Claim for Contributory Infringement................................................................ 12

CONCLUSION..................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**                                                                                        **Page(s)**

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
377 U.S. 476 (1964).................................................................................................13

*Bell Atlantic Corp. v. Twombly*,
515 U.S. 544 (2007).............................................................................................2, 3, 4

*Catapano v. Wyeth Ayerst Pharm., Inc.*,
88 F. Supp. 2d 27 (E.D.N.Y. 2000) ........................................................................10

*DSU Medical Corp. v. JMS Co.*,
471 F.3d 1293 (Fed. Cir. 2006).................................................................................11

*Golden Blout, Inc. v. Robert H. Peterson Co.*,
438 F.3d 1354 (Fed. Cir. 2006).................................................................................10

*Hewlett-Packard Co. v. Bausch & Lomb, Inc.*,
909 F.2d 1464 (Fed. Cir. 1990).................................................................................13

*In re Papst Licensing GmbH & Co. KG Litig.*,
585 F. Supp. 2d 32 (D.D.C. 2008) ....................................................................3, 4, 5, 6

*Judin v. United States*,
110 F.3d 780 (Fed. Cir. 1997)......................................................................................4

*Limestone Dev. Corp. v. Village of Lemont*,
520 F.3d 797 (7th Cir. 2008) ......................................................................................4

*MacNeill Eng'g Co. v. Trisport, Ltd.*,
59 F. Supp. 2d 199 (D. Mass. 1999) .........................................................................13

*Manville Sales Corp. v. Paramount Sys., Inc.*,
917 F.2d 544 (Fed. Cir. 1990)...................................................................................10

*McZeal v. Sprint Nextel Corp.*,
501 F.3d 1354 (Fed. Cir. 2007)....................................................................................6

*Phillips v. County of Allegheny*,
515 F.3d 224 (3d. Cir. 2008).......................................................................................2

*Ristvedt-Johnson, Inc. v. Peltz*,
No. 91 C 3273, 1991 WL 255691 (N.D. Ill. Nov. 18, 1991)................................10

**Cases**                                                                                          **Page(s)**

*SEB, S.A. v. Montgomery Ward & Co., Inc.*,
412 F. Supp. 2d 336 (S.D.N.Y. 2006)....................................................................................11

*Shearing v. Optical Radiation Corp.*,
Nos. CV-S-93-850-DWH (LRL), CV-S-93-859-DWH(LRL) to
CV-S-93-863-DWH(LRL), CV-S-93-865-DWH(LRL) to CV-5-93-870-DWH(LRL),
1994 WL 38244 (D. Nev. Mar. 25, 1994) ..........................................................................6, 10, 13

*Triune Star, Inc. v. Walt Disney Co.*,
No. 07-1256, 2008 WL 3849913 (C.D. Ill. Aug. 14, 2008) ..................................................11

*Young Dental Mfg. Co. v. Q3 Special Prods., Inc.*,
891 F. Supp. 1345 (D. Mo. 1995),
*rev'd on other grounds*, 112 F.3d 1137 (Fed. Cir. 1997) .......................................................12


**Rules and Statutes**

Fed. R. Civ. P. 8 ....................................................................................................................4

Fed. R. Civ. P. 11 ..................................................................................................................4

35 U.S.C. § 271(b) ................................................................................................................10

35 U.S.C. § 271(c) ................................................................................................................13

## I.    INTRODUCTION

Not only is Plaintiffs' Complaint devoid of even the necessary bare bone factual allegations to allege either direct or indirect patent infringement, but also Plaintiffs do <u>not</u> appear to have (and do not allege in the Complaint) anything more than a speculative belief that Defendants had made, used, sold, or offered for sale any allegedly infringing EMPOWERMR injectors during the relevant time period, namely after the patent-in-suit issued.   Plaintiffs' Complaint should therefore be dismissed.

As is discussed in great detail in Defendants'' Opening Brief on this Motion (D.I. 8), Plaintiffs fail to allege all the necessary elements of claims for direct infringement, namely that Defendants make, use, sell, or offer to sell a product that embodies the claims of the patent-in-suit, and for indirect infringement, namely that Defendants acted with the requisite intent and knowledge required for asserting inducement of infringement and contributory infringement.   In addition to the above, Plaintiffs fail to aver that any alleged infringing acts of Defendants occurred in the short time period between the issuance of the patent-in-suit and the filing of the Complaint.   Such a factual allegation is essential to adequately allege any claim of infringement because alleged acts occurring before the issuance of the patent-in-suit would not infringe. Plaintiffs utterly fail to meet either of these pleading requirements.

Five days before the Complaint was filed, the U.S. Patent and Trademark Office issued the patent-in-suit.   As such, in order for Plaintiffs' Complaint to have been grounded in fact and not be merely based on speculation, as required by the Federal Rules, Plaintiffs had to undertake a reasonable pre-filing inquiry to determine some factual basis for their infringement claims. Plaintiffs apparently failed to undertake any such reasonable pre-filing inquiry.   This is evident

1

by their failure to plead any facts that would support, even by inference, that Defendants made, used, sold, or offered for sale, any alleged infringing injectors during this five-day period.

In fact, based on knowledge Plaintiffs have from the currently pending Texas action between these same parties, regarding the same allegedly infringing injector, Plaintiffs knew that the EMPOWERMR injector is a low-volume, expensive piece of medical equipment sold only to certain hospitals. Thus, Plaintiffs knew that in the particular five-day period between March 31, 2009 and April 4, 2009, the likelihood of an EMPOWERMR injector being manufactured, used, sold, or offered for sale was slim. Yet, instead of undertaking any pre-filing inquiry and waiting for some factual basis to support their infringement claim, Plaintiffs elected to file this action based on speculation, in violation of the Federal Rules and contrary to leading Supreme Court and Third Circuit case law. *See Bell Atlantic Corp. v. Twombly*, 515 U.S. 544 (2007); *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d. Cir. 2008).

Without alleging any factual information as to when, where, or to whom Defendants committed the allegedly infringing acts in this limited five-day period on which it had to have been committed, Plaintiffs have failed to give Defendants the fair notice of the claims as required by the Federal Rules. As such, the Complaint is fatally speculative and must be dismissed for failure to state a claim upon which relief can be granted. The failure of the Complaint to be grounded in fact is in addition to and above Plaintiffs' failure to adequately plead all the elements of each claim for patent infringement. Under either analysis, the Complaint should be dismissed for failure to state a claim upon which relief can be granted.

## II.    LEGAL ANALYSIS

As stated above, Plaintiffs' Complaint should be dismissed, not only because it fails to allege all the necessary elements of the claims of patent infringement, but also because it was filed <u>before</u> the required pre-filing inquiry was undertaken, and is fatally speculative.

2

### A.      The Complaint is Not Grounded in Fact.

Due to Plaintiffs' decision to file this suit shortly after their patent issued, Plaintiffs gave themselves only a narrow window in which any alleged acts of infringement had to have occurred, namely some time between the issuance of the patent on March 31, 2009 and the filing of the Complaint on April 4, 2009.  Apparently, Plaintiffs could not or did not gather any facts regarding alleged infringing acts during that time period because the Complaint lacks any allegation that Defendants made, used, sold or offered for sale an EMPOWERMR injectors, or that an EMPOWERMR injector was "installed" on a date subsequent to the issuance of the patent-in-suit.  Such an allegation is *essential* since any EMPOWERMR injector that was alleged to have been made, used, sold, offered for sale or installed prior to the issuance of the patent-in-suit, cannot infringe.  Plaintiffs cannot enforce its patent against acts of infringement that occurred prior to issuance.

Thus, in order for Plaintiffs' infringement claim to reach a level above mere speculation and satisfy the fair notice pleading standards set forth by *Twombly* and *Philipps*, the Complaint would have had to set forth some factual allegations to support that Defendants had committed some act between March 31 and April 4 that infringed this newly-issued patent.  The Complaint has no such allegation, nor does it have any factual allegation from which this could be inferred.

In fact, the allegations in the Complaint are only vague allegations "on information and belief."  Paragraphs 10 and 11 of the Complaint respectively allege that "[o]n information and belief, Defendants make, use, offer to sell and/or sell…"  and "[o]n information and belief, Defendants install their EmpowerMR injector . . . ."  *See* D.I. 1 at ¶¶ 10, 11.  There are no facts alleging, for example, a date on which a sale, offer for sale, or installation took place, to whom the product was offered, where an injector was installed, or any other fact from which any such information could be inferred.  As the Court stated in *In re Papst*, "a complaint should identify

the 'circumstances, occurrences, and events' giving rise to the claim." *In re Papst Licensing GmbH & Co. KG Litig.*, 585 F. Supp. 2d 32, 36 (D.D.C. 2008).  "[T]he court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations."  *Id.*  The threadbare allegations in Plaintiffs' Complaint simply do not meet these pleading standards and the Complaint should be dismissed.   The Complaint fails to give Defendants fair notice of the claims as required by Rule 8 of the Federal Rule of Civil Procedure. *Id.* at 35-36.

This is especially true in a patent infringement claim.  Courts recognize that in cases where discovery is likely to be massive and costly, like in patent or anti-trust litigation, Plaintiffs are often required to plead additional facts to give their claims the "heft" to make them plausible. *See Twombley*, 515 U.S. at 558; *In re Papst*, 585 F. Supp. 2d at 36 (threshold of plausibility of claims of a complaint must be reached in multidistrict patent before imposing needless expenses on defendant);  *Limestone Dev. Corp. v. Village of Lemont*, 520 F.3d 797, 804-05 (7th Cir. 2008) (complex cases or where cases for which discovery is likely to be unusually costly require more factual detail to reach plausibility requirement of *Twombly*).

Further, Plaintiffs had a duty to conduct a pre-filing inquiry to acquire sufficient information so that their claims could "raise a right to relief above the speculative level." *Judin v. United States*, 110 F.3d 780, 784 (Fed. Cir. 1997) ("Rule 11 is aimed at curbing baseless filings, which abuse the judicial system and burden courts and parties with needless expense and delay.");  *In re Papst*, 585 F. Supp. 2d at 35, n.2 ("Rule 11 requires that the inquiry be undertaken before the suit is filed, not after.").  Plaintiffs failed to do so.  As stated in *In re Papst*:

> [t]he very purpose of the notice pleading requirement is to permit the court 'to determine at the outset of the litigation, before costly discovery is undertaken, whether the plaintiff has any tenable theory or basis of suit, so that if he does not the case can be got (sic) rid of immediately without

4

> clogging the court's docket and imposing needless expense of the defendant.

*Id.* at 36 (dismissing patent infringement complaint for failure to allege sufficient factual allegations).

Instead of taking the time to conduct a pre-filing inquiry to gather some factual support on which to allege some activity by Defendants, Plaintiffs rushed to file a baseless complaint devoid of any alleged facts.  Plaintiffs' apparent strategy was to burden Defendants with another suit, and in the process, altogether failed to conduct an adequate pre-filing investigation.  Consequently, Plaintiffs had no facts to support a claim of direct or indirect infringement.  As such, their Complaint must be dismissed.

### B. The Complaint Fails to Allege Necessary Elements of Each Patent Infringement Claim.

In addition to lacking the factual basis necessary to state a plausible claim for infringement, the Complaint also fails to even allege the necessary elements of a patent infringement claim.

In deciding a motion to dismiss for failure to state a claim upon which relief can be granted, "the Court may consider only 'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference . . . and matters about which the Court may take judicial notice.'"  *In re Papst*, 585 F. Supp. 2d at 34 (internal quotation omitted) (granting motion to dismiss patent claims for failure to state a claim).  Taking the facts as alleged in the Complaint, Plaintiffs have not stated a claim for patent infringement.

### 1. Direct Patent Infringement Claim

Plaintiffs' argument in their Answering Brief (D.I. 28) about the adequacy of the pleading of their direct infringement claim totally misses the point.  Even if Plaintiffs were able

2224565/1

to get over the hurdle set forth above, they <u>fail to even allege the minimum pleading to set forth a claim for direct infringement</u>.

A direct infringement claim specifically requires "**a statement that defendant has been infringing the patent 'by making, selling, and using [the device] embodying the patent."** *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356-57 (Fed. Cir. 2007) (emphasis added); *see also Shearing v. Optical Radiation Corp.*, Nos. CV-S-93-850-DWH (LRL), CV-S-93-859-DWH(LRL) to CV-S-93-863-DWH(LRL), CV-S-93-865-DWH(LRL) to CV-5-93-870-DWH(LRL), 1994 WL 38244, at *2 (D. Nev. Mar. 25, 1994) (finding Plaintiff did not meet minimum pleading requirement because the Complaint did not adequately allege how Defendants' act of manufacturing and sale of a *product* was alleged to infringe Plaintiff's patent covering a *method*.); *In re Papst*, 585 F. Supp. 2d at 35 (granting motion to dismiss patent claims). Defendants simply do not make, use or sell a product embodying the patent-in-suit, nor do they practice a method embodying the patent-in-suit, and as a consequence, Plaintiffs do not and cannot allege this in the Complaint.

Focusing particularly on Claims 18 and 28 of the patent-in-suit, which are the two claims that are the subject of Plaintiffs' Motion for Preliminary Injunction (D.I. 15), these claims cover "a medical <u>imaging suite</u> . . ." and "a method for <u>operating</u> a magnetic resonance <u>imaging suite</u>," respectively. As stated in Claim 18,[1] the "suite" is comprised of many components including a "shielded room having walls," "an AC rower (sic) outlet located outside the room," a "magnetic resonance imaging system . . . located inside the room," and "a power injector system." As Plaintiffs are well aware, and as they have alleged in the Complaint, Defendants' product is an EMPOWERMR injector. *See* D.I. 1 at ¶10 ("Defendants make, use, offer to sell, and/or sell a

---

[1] Claim 12 also covers a "medical imaging suite . . . ." comprised of "shielded room having walls," "an AC power outlet located outside the room," a "magnetic resonance imaging system . . . located inside the room," and "a power injector system" and thus the same arguments apply to this claim.

*power injector* under the name EmpowerMR." (emphasis added)).  Defendants are not alleged to make, use, offer to sell and/or sell a "shielded room" or an "AC outlet" or a "magnetic resonance imaging system."  Defendants do not make, use, offer to sell or sell a magnetic resonance imaging ("MRI") "suite" nor is this alleged in the Complaint.

As Plaintiffs are well aware, Defendants do not create, build or design the rooms or power outlets embodying the "suite," nor is this alleged in the Complaint.  All Defendants are alleged to do is "install" one single component, namely the contrast injector that is found in the "suite," and the resulting "suite" allegedly infringes.  This simply <u>fails to state a claim for direct infringement</u> by Defendants.

Similarly, Claim 28, covers a "***method of operation*** for a magnetic resonance imaging suite…:" (emphasis added).  The Complaint nowhere alleges that Defendants operate an MRI suite.[2]

The only additional independent claims in the patent-in-suit are Claims 12, 8, and 1.  These claims are not the subject of Plaintiffs' Motion for Preliminary Injunction (D.I. 15, 17).  As discussed in footnote 1, Claim 12 also covers an MRI suite, and Defendants are not alleged to make, use or sell an MRI suite.

Claim 8 covers a "***method of connecting a battery-operated magnetic resonance*** (MR) injector system . . . " comprising numerous steps including:  "placing a power supply outside the shielded magnet room," "providing shielded cables," "providing a radio frequency filter," and "connecting a power control of the MR injector system in said shielded room."  Once again, the only acts that Defendants are alleged to commit in the Complaint are making, using and selling an injector and installing said injector in a pre-existing MRI suite.  Defendants are not alleged to commit all the discrete steps recited in this claim which comprise the "method of connecting the

---

[2] Defendants cannot operate an MRI suite.  They are not licensed to do so and are not in that business.

7

MR injector system."   Further, Defendants' EMPOWERMR injector is *not* battery-operated. Thus, Plaintiffs have failed to state a claim for direct infringement of Claim 8, as well.

In addition, Claim 1 covers a "power injector system" comprising:  "a power head and power control," a "power supply for operation outside the shielded room," and a "power connection configured to couple electrical power . . . and the power control . . . ."  Defendants are only alleged to make, use or sell an injector, not an "injector system" comprised of all these recited components.  Thus, Plaintiffs have similarly failed to state a claim for direct infringement of Claim 1.

Instead of addressing the issues directly, Plaintiffs attempt to confuse matters by first referring correctly to the EMPOWERMR as an "injector" in paragraph 10 of the Complaint, and then by designating this same injector in paragraph 12 of the Complaint as an "injector system." *See* D.I. 1 at ¶¶ 10, 12 ("Defendants have infringed, and continue to infringe, contribute to infringement of, and/or induce infringement of, . . . one or more claims of the '434 patent by making, using, offering to sell, and/or selling *certain injector systems*, including but not limited to **injectors** marketed under the name EmpowerMR." (emphasis added)).[3]  However, as stated above, the term "injector system" is defined in the '434 patent as a multi-component system, only one component being an "injector."  Plaintiffs make no allegations in their Complaint that Defendants make, use, offer to sell, and/or sell anything other than the EMPOWERMR injector. Thus, Plaintiffs have failed to state a claim of direct infringement of Claim 1.

---

[3] Plaintiffs misquote Acist's website as referring to the EMPOWERMR system.  The full sentence actually states:

> "The EmpowerMR system represents *the next generation of power contrast injectors* with its unique hydraulic system."

Plaintiffs also attempt to argue that the allegation that Defendants "install their EmpowerMR injector in magnetic resonance imaging ("MRI") suites" which are configured in such a way so that the suite ultimately is infringing makes out a claim for direct infringement.  In their Answering Brief (D.I. 28), Plaintiffs attempt to equate Defendants' installation with a party who assembles component parts to make an infringing product (an allegation that is notably **NOT** in the Complaint).  Not surprisingly, Plaintiffs cite <u>no case law</u> to support such a theory.  As Plaintiffs well know, Defendants do not design or build these suites.  The allegations as stated in the Complaint clearly do not recite even a barebones direct patent infringement claim.

### C.     Claim for Inducing Infringement

Plaintiffs, in addition to their failure to allege that any of the product in question was made, used, sold or offered for sale subsequent to the issuance of the patent, have also failed to adequately plead a claim for inducing infringement.

Plaintiffs confuse the pleading standard for such a claim and contradict themselves within their Answering Brief (D.I. 28).  On one page of their Answering Brief, Plaintiffs state that a claim for inducement of infringement requires a showing "that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." (D.I. 28 at p. 5.)  On the very next page, Plaintiffs state that "Mallinckrodt need <u>not</u> plead that E-Z-EM intended to induce infringement…." (D.I. 28 at p. 6) (emphasis added).

As set forth in greater detail in Defendants' Opening Brief (D.I. 8), case law is clear that to ***successfully plead inducement of infringement***, specific intent must be alleged.  Instead of addressing this point, Plaintiffs attempt to skirt the issue by stating that "intent can be proven through circumstantial evidence."  (D.I. 28 at p. 6.)  How Plaintiffs ultimately intend to prove Defendants' alleged intent is irrelevant.

9

What is at issue is the adequacy of the allegations in Plaintiffs' Complaint.  There is simply no allegation anywhere in the Complaint regarding Defendants' intent.  As such, the Complaint fails to state a claim for inducement of infringement.  *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990);  *Ristvedt-Johnson, Inc. v. Peltz*, No. 91 C 3273, 1991 WL 255691, at **4-5 (N.D. Ill. Nov. 18, 1991) (bald assertion of inducement without allegation of facts to support it does not meet the pleading requirements);  *Catapano v. Wyeth Ayerst Pharm., Inc.*, 88 F. Supp. 2d 27, 30 (E.D.N.Y. 2000) (claim dismissed because no allegation of specific intent to induce infringement);  *Shearing*, 1994 WL 38244, at *2 (dismissing complaint that failed to make allegations of the "inducer knowingly and with specific intent encouraged that other's infringement").

As stated in *Shearing*, "[w]hile intent and knowledge need only be averred generally, **such *must* be averred**."  *Id.* (emphasis added) (citation omitted).  Here, Plaintiffs have completely failed to make any allegation of any intent by Defendants in their Complaint and thus the claim must be dismissed.

Plaintiffs also attempt to confuse the issue by arguing about what type of intent need be proven.  Whether it is intent to "induce the specific acts [of infringement] or additionally to cause the infringement" is irrelevant.[4]  In either case, some intent on the part of Defendants must be alleged.  Plaintiffs do not allege any "intent" or even "willfulness" in the Complaint as filed.  Thus, they fail to allege a claim for inducement of infringement.

In addition, besides lacking any allegations of intent, Plaintiffs' Complaint also lacks any

---

[4]  Plaintiffs argue that *Golden Blout, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1364 (Fed. Cir. 2006) is controlling on what type of intent must be proven.  However, in a later decision, *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293 (Fed. Cir. 2006), the Federal Circuit addressed *en banc* the required intent to establish active inducement under § 271(b).  In *DSU Medical*, the court clarified that the intent requirement was intent to cause infringement, not merely intent to cause the specific acts.  *Id.* at 1304-06.

allegations of another essential element -- knowledge of the patent.  In order for there to be any intentional acts, the Defendants must have prior knowledge of the patent.  *DSU Medical Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006) (citation omitted) (requirement that alleged infringer knew his actions would induce infringement necessarily includes requirement that he knew of the patent.); *Triune Star, Inc. v. Walt Disney Co.*, No. 07-1256, 2008 WL 3849913, at *4 (C.D. Ill. Aug. 14, 2008) (dismissing complaint).

Plaintiffs do <u>not</u> dispute that knowledge of the patent is an essential element of a claim for inducement of infringement.  Nor do they dispute that Defendants were not sent a notice letter prior to the filing of this action.  Instead, they argue that the filing of the Complaint constitutes the requisite knowledge for an inducement of infringement claim.  Such an assertion is non-sensical.  If Defendants were only informed of the patent-in-suit by the filing of the Complaint, they could not have already committed acts of inducement of infringement upon the filing of the Complaint.  Such a theory defies logic.

The only case that Plaintiffs cite to support their contention that the filing of the Complaint is sufficient notice for an inducement claim is completely inapposite because the case is a decision on a summary judgment motion that was filed seven years after the case was filed and after the close of discovery.  *SEB, S.A. v. Montgomery Ward & Co., Inc.*, 412 F. Supp. 2d 336 (S.D.N.Y. 2006).  The case does not address the adequacy of the allegations of a Complaint on a Motion to Dismiss, which is the issue addressed in this Motion.

In this action, Plaintiffs fail to allege that Defendants had knowledge of the patent-in-suit prior to filing of the Complaint.  Defendants could not have had the requisite knowledge to induce infringement because the patent-in-suit only issued on March 31, 2009.  The Complaint was filed on April 4, 2009 and served thereafter.  Since Defendants could not have had knowledge of the patent-in-suit, and Plaintiffs fail to allege a necessary element of a cause of

action for a claim of inducing infringement, the claim of inducement of infringement must be dismissed for a failure to state a claim upon which relief can be granted.

Plaintiffs also claim that because Defendants cited the patent application that eventually became the '434 patent in an Information Disclosure Statement in one of E-Z-EM's patent in October 2007, they had "knowledge" of the patent-in-suit. Notably, this factual allegation is also NOT in the Complaint. In addition, Plaintiffs fail to disclose that in October 2007, when this application was cited in the E-Z-EM application, all the claims of the application for the patent-in-suit had *received a final rejection* from the U.S. Patent and Trademark Office (Final Rejection, attached as Exhibit A). In fact, the claims which finally issued in the patent-in-suit were much different than the claims as they were stated in the patent application in October 2007. Claims 18 and 28 of the patent-in-suit, on which Plaintiffs have moved for Preliminary Injunction, were not even added to the patent until December 2008. Knowledge of a finally-rejected patent application with claims vastly different than those of the patent as issued is not and cannot be knowledge of the patent, as contemplated by the statute and case law. *Young Dental Mfg. Co. v. Q3 Special Prods., Inc.*, 891 F. Supp. 1345, 1348 (D. Mo. 1995) (finding that "mere knowledge that an application for a patent is pending is not sufficient to constitute the knowing and intentional inducement required for a violation of section 271(b)"), *rev'd on other grounds*, 112 F.3d 1137 (Fed. Cir. 1997).

Thus, Plaintiffs have failed to allege both intent and knowledge of the patent as required for a claim for inducement of infringement and thus, they have failed to state a claim for inducement of infringement.

### D.     Claim for Contributory Infringement

As set forth in Defendants' Opening Brief (D.I. 8) on this motion, a claim for contributory infringement also requires that Defendants have specific knowledge that their

activity would cause infringement.  Section 35 U.S.C. § 271(c) requires not only knowledge that the component was especially made or adapted for a particular use but also ***knowledge of the alleged infringed patent***.  *See Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964) (section 271(c) requires "a showing that the alleged contributory infringer knew that the combination for which his component was especially designed was both patented and infringing"); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1468-69 n.4 (Fed. Cir. 1990) ("271(c) requires not only knowledge that the component was especially made or adapted for a particular use but also knowledge of the patent which proscribed that use.").  Plaintiffs do not allege knowledge of either in their Complaint.

As set forth above, the patent-in-suit in this action issued on March 31, 2009, four days before the Complaint was filed.  There are no allegations in the Complaint that Defendants had knowledge, prior to the filing of Complaint, of this recently-issued patent.  As discussed above, Plaintiffs' argument that Defendants had knowledge of Plaintiffs' finally-rejected patent application, which issued 18 months later with completely different claims, does not meet this standard.  Additionally, these factual allegations were not in Plaintiffs' Complaint.

Further, an additional requirement of a claim for contributory infringement requires an allegation that the alleged infringing product is not suitable for substantially noninfringing use. *Shearing*, 1994 WL 38244, at *2.  The Complaint also fails to allege this additional requirement for a contributory infringement claim.  Thus, without any allegation of the requisite knowledge required for a claim of contributory infringement, Plaintiffs claim must fail.  *See MacNeill Eng'g Co. v. Trisport, Ltd.*, 59 F. Supp. 2d 199, 201-02 (D. Mass. 1999) (denying request to amend complaint to add claim of contributory infringement).

As such, Plaintiffs claims for indirect infringement lack the necessary elements of the claims and must be dismissed.

## CONCLUSION

Plaintiffs have failed to present any viable arguments to support that their Complaint states a claim upon which relief can be granted.  Thus, it should be dismissed in its entirety.  Should the Court not dismiss the Complaint in its entirety, Defendants respectfully request that the Court transfer this action to the District Court in the Eastern District of Texas, as per Defendants'' Motion to Transfer filed April 24, 2009 (D.I. 9, 10).  Defendants note that they have already filed a Declaratory Judgment Complaint in the Eastern District of Texas covering these same issues.  The Texas Declaratory Judgment Complaint was filed and served by Defendants after their own pre-filing inquiry and would permit Plaintiffs a forum for relief on this issue.  Defendants' Declaratory Judgment Complaint in Texas is not fatally speculative.

Dated:  May 21, 2009

> _/s/ Mary B. Matterer_
> **MORRIS JAMES LLP**
> Richard K. Herrmann (#405)
> Mary B. Matterer (#2696)
> 500 Delaware Avenue
> Suite 1500
> Wilmington, Delaware 19801-1494
> (302) 888-6960
> rherrmann@morrisjames.com
> mmatterer@morrisjames.com
>
> **ALSTON & BIRD LLP**
> Philippe Bennett
> 90 Park Avenue
> New York, New York 10016
> (212) 210-9400
> philippe.bennett@alston.com
>
> _Attorneys for Defendants E-Z-EM, Inc. and_
> _ACIST Medical Systems, Inc._

14

# EXHIBIT A



## UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/851,462 | 05/08/2001 | Peter Staats | L-F / 207US | 3615 |

26875      7590      03/26/2007
WOOD, HERRON & EVANS, LLP
2700 CAREW TOWER
441 VINE STREET
CINCINNATI, OH 45202

| EXAMINER |
|---|
| ROZANSKI, MICHAEL T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3768 | |

| SHORTENED STATUTORY PERIOD OF RESPONSE | MAIL DATE | DELIVERY MODE |
|---|---|---|
| 3 MONTHS | 03/26/2007 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

If NO period for reply is specified above, the maximum statutory period will apply and will expire 6 MONTHS from the mailing date of this communication.

PTOL-90A (Rev. 10/06)

ED

| | Application No. | Applicant(s) |
|---|---|---|
| ***Office Action Summary*** | 09/851,462 | STAATS ET AL. |
| | Examiner | Art Unit | |
| | Michael Rozanski | 3768 | |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>04 December 2006</u>.

2a)☒ This action is **FINAL**.       2b)☐ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>1-17</u> is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>1-17</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All  b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)

2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3) ☐ Information Disclosure Statement(s) (PTO/SB/08) Paper No(s)/Mail Date _____.

4) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date _____.

5) ☐ Notice of Informal Patent Application

6) ☐ Other: _____.

Application/Control Number: 09/851,462                                    Page 2
Art Unit: 3768

## DETAILED ACTION

### *Response to Arguments*

1.      Applicant's arguments filed 6/23/2006 have been fully considered but they are

not persuasive. As noted by Examiner in the previous office action, Critchlow et al. '555

do not teach a power supply for operation outside the shielded room to receive electrical

power; and a power connection configured to couple electrical power through the

penetration panel between the power supply outside the shielded room and the power

head for actuating the power head.  However, it would have been obvious to one skilled

in the art at the time that the invention was made to have modified Critchlow et al. '555

in view of Kormos et al. '285 to incorporate the use of a remote power supply with a

shielded wire instead of an enclosed power supply as an alternative way of reducing

EMI noise.

With regard to the RF filter, both Critchlow et al. '555 and the Kormos et al. '285

do not explicitly teach the power connection comprising a radio frequency filter reducing

radio frequency electrical energy carried through said power connection.  It would have

been obvious to one skilled in the art at the time that the invention was made to have

modified Critchlow et al. '555 and the Kormos et al. '285 and incorporated the teaching

of Ziarati '544 in order to use RF filters in the penetration panel to prevent RF noise

from interfering with image quality.  Also note Applicant's own admission as prior art in

Figure 1 wherein such filters are used when outside cables penetrate the MRI room.

Application/Control Number: 09/851,462                                    Page 3
Art Unit: 3768

In addition, Examiner respectfully disagrees that official notice cannot be taken

for making it obvious to combine signal connections to have a single cable.  In Pub No.

US 2004/0197058 to Eichelberger et al., it is admitted as old that fine coaxial shielded

cables are bundled in a single cable, providing protection against electrical noise (para.

[0004]).  The previous rejection is sustained and made Final as it would have been

obvious for the reasons given above to achieve the claimed invention.  Newly added

claims 8-17 are also rejected for reasons given below.  Examiner would like to point out

that Applicant Remarks filed 12/4/2006 do not make mention of newly added claim 17.


### Claim Rejections - 35 USC § 103

2.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set
> forth in section 102 of this title, if the differences between the subject matter sought to be patented and
> the prior art are such that the subject matter as a whole would have been obvious at the time the
> invention was made to a person having ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which the invention was made.

3.      Claims 1-17 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Critchlow et al. '555 in view of Kormos et al. '285, Ziarati '544 (US Patent No.

5,432,544), and Eichelberger et al (US Pub. 2004/0197058).

Regarding claims 1, 3-17 Critchlow et al. '555 teach a power injector system and

a method for use with a magnetic resonance imaging system installed at least in part

within an electromagnetic interference shielded room electrically accessible via a

penetration panel (in Figure 1, scanner room 115 which is electrically accessible via

penetration panel 142 also see paragraph 0014), the power injector system comprising:

Application/Control Number: 09/851,462                                    Page 4
Art Unit: 3768

a power head adapted for operation within the shielded room to controllably inject a

compound into a patient (see paragraph 0030 and paragraphs 0042-0045; referring to

the components of the injector including the power being enclosed in a Faraday cage

137 in order to shield and reduce EMI noise) and a control panel 110 as indicated in

Figure 1 to control the injection process by signals transmitted through the fiber optic

140 (see 0038).

      Critchlow et al. '555 do not teach a power supply for operation outside the

shielded room to receive electrical power; and a power connection configured to couple

electrical power through the penetration panel between the power supply outside the

shielded room and the power head for actuating the power head.

      In the same field of endeavor, Kormos et al. '285 teach the use of shielded

spaces to enclose the equipment of choice in the MRI shielded room (see col. 5, lines

27-56). Kormos et al. '285 further teach the modification of using a remote power

supply with a coupled shielded wire thereby removing the power from the MRI room in

order to reduce EMI noise (see col. 6, lines 9-33).

      It would have been obvious to one skilled in the art at the time that the invention

was made to have modified Critchlow et al. '555 in view of Kormos et al. '285 to

incorporate the use of a remote power supply with a shielded wire instead of an

enclosed power supply as an alternative way of reducing EMI noise.

      Critchlow et al. '555 further teach a power control adapted for operation within

the shielded room interposed between the power supply and the power head, the power

control operable to selectively actuate power head comprising an electro-mechanical

motor with the power received via the power connection from the power supply (see
paragraphs 0033-0034 and referring to the power drive card 230).

Both the Critchlow et al. '555 and the Kormos et al. '285 references teach the
fiber optic cable for providing control signals, and as stated in Kormos et al. '285 col. 6,
lines 30-33, this is to allow for better transmission of the signals without degradation of
data over long distances. Therefore, it would have been obvious to one skilled in the art
at the time that the invention was made that over short distances the use of shielded
cables are equivalent to fiberoptics and one skilled in the art would be motivated to use
one instead of the other as a functional equivalent providing the same end result of
signal and/or power transmission.

Critchlow et al. '555 and the Kormos et al. '285 do not explicitly teach the power
connection comprising a radio frequency filter reducing radio frequency electrical energy
carried through said power connection.

In the same field of endeavor, Ziarati '544 teach the use of cables passing
through RF filters disposed in a penetration panel to prevent RF noise from external
room propagating into the magnet room in order to avoid adversely affecting the image
quality, thereby attenuating noise within a band to correspond to the RF frequencies
used by the MRI system (see col. 3, lines 26-41). The RF filter also grounds conductive
shields included within the power connection (see col. 3, line 62-col. 4, line 4). The
Ziarati '544 system use ultrasound apparatus 80 (see col. 4, lines 20-41), which would
have made it obvious to one skilled in art at the time the invention was made to use a

Application/Control Number: 09/851,462                                    Page 6
Art Unit: 3768

motor in Critchlow et al. '555 with ultrasonic functionality for facilitating the dispense of

constast media and saline solution into a patient.

It would have been obvious to one skilled in the art at the time that the invention

was made to have modified Critchlow et al. '555 and the Kormos et al. '285 and

incorporated the teaching of Ziarati '544 in order to use RF filters in the penetration

panel to prevent RF noise from interfering with image quality. Also note Applicant's own

admission as prior art in Figure 1 wherein such filters are used when outside cables

penetrate the MRI room.

Regarding claims 2 and 15, with respect to the use of a power connection, which

is coupled to the data signals thereby creating a single connection, it is a well

established principle in the art of electronics that a single cable is preferred over

multiple cables to avoid noise. In Pub No. US 2004/0197058 to Eichelberger et al., it is

admitted as old that fine coaxial shielded cables are bundled in a single cable, providing

protection against electrical noise (para. [0004]).


### Conclusion

4.    **THIS ACTION IS MADE FINAL.** Applicant is reminded of the extension of time

policy as set forth in 37 CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action. In the event a first reply is filed within

TWO MONTHS of the mailing date of this final action and the advisory action is not

mailed until after the end of the THREE-MONTH shortened statutory period, then the

Application/Control Number: 09/851,462                                   Page 7
Art Unit: 3768

shortened statutory period will expire on the date the advisory action is mailed, and any

extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of

the advisory action. In no event, however, will the statutory period for reply expire later

than SIX MONTHS from the mailing date of this final action.


5.     Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Michael Rozanski whose telephone number is 571-272-

1648. The examiner can normally be reached on Monday - Friday, 8-4:30.

        If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Eleni Mantis-Mercader can be reached on 571-272-4740. The fax phone

number for the organization where this application or proceeding is assigned is 571-

273-8300.

        Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system. Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

MR

ELENI MANTIS MERCADER
SPE 3768

| **Notice of References Cited** | | Application/Control No.<br>09/851,462 | Applicant(s)/Patent Under Reexamination<br>STAATS ET AL. | |
|---|---|---|---|---|
| | | Examiner<br>Michael Rozanski | Art Unit<br>3768 | Page 1 of 1 |

### U.S. PATENT DOCUMENTS

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-2004/0197058 | 10-2004 | Eichelberger et al. | 385/101 |
| | B | US- | | | |
| | C | US- | | | |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

### FOREIGN PATENT DOCUMENTS

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

### NON-PATENT DOCUMENTS

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)                    **Notice of References Cited**                    Part of Paper No. 20070308

| *Index of Claims* | | Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|---|---|
| | | 09/851,462 | STAATS ET AL. |
| | | Examiner | Art Unit |
| | | Michael Rozanski | 3768 |

| √ | Rejected | – | (Through numeral) Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

| Final | Original | 3/8/07 | | | | | | | Final | Original | | | | | | | | Final | Original | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | √ | | | | | | | | 51 | | | | | | | | | 101 | | | | | | | |
| | 2 | √ | | | | | | | | 52 | | | | | | | | | 102 | | | | | | | |
| | 3 | √ | | | | | | | | 53 | | | | | | | | | 103 | | | | | | | |
| | 4 | √ | | | | | | | | 54 | | | | | | | | | 104 | | | | | | | |
| | 5 | √ | | | | | | | | 55 | | | | | | | | | 105 | | | | | | | |
| | 6 | √ | | | | | | | | 56 | | | | | | | | | 106 | | | | | | | |
| | 7 | √ | | | | | | | | 57 | | | | | | | | | 107 | | | | | | | |
| | 8 | √ | | | | | | | | 58 | | | | | | | | | 108 | | | | | | | |
| | 9 | √ | | | | | | | | 59 | | | | | | | | | 109 | | | | | | | |
| | 10 | √ | | | | | | | | 60 | | | | | | | | | 110 | | | | | | | |
| | 11 | √ | | | | | | | | 61 | | | | | | | | | 111 | | | | | | | |
| | 12 | √ | | | | | | | | 62 | | | | | | | | | 112 | | | | | | | |
| | 13 | √ | | | | | | | | 63 | | | | | | | | | 113 | | | | | | | |
| | 14 | √ | | | | | | | | 64 | | | | | | | | | 114 | | | | | | | |
| | 15 | √ | | | | | | | | 65 | | | | | | | | | 115 | | | | | | | |
| | 16 | √ | | | | | | | | 66 | | | | | | | | | 116 | | | | | | | |
| | 17 | √ | | | | | | | | 67 | | | | | | | | | 117 | | | | | | | |
| | 18 | | | | | | | | | 68 | | | | | | | | | 118 | | | | | | | |
| | 19 | | | | | | | | | 69 | | | | | | | | | 119 | | | | | | | |
| | 20 | | | | | | | | | 70 | | | | | | | | | 120 | | | | | | | |
| | 21 | | | | | | | | | 71 | | | | | | | | | 121 | | | | | | | |
| | 22 | | | | | | | | | 72 | | | | | | | | | 122 | | | | | | | |
| | 23 | | | | | | | | | 73 | | | | | | | | | 123 | | | | | | | |
| | 24 | | | | | | | | | 74 | | | | | | | | | 124 | | | | | | | |
| | 25 | | | | | | | | | 75 | | | | | | | | | 125 | | | | | | | |
| | 26 | | | | | | | | | 76 | | | | | | | | | 126 | | | | | | | |
| | 27 | | | | | | | | | 77 | | | | | | | | | 127 | | | | | | | |
| | 28 | | | | | | | | | 78 | | | | | | | | | 128 | | | | | | | |
| | 29 | | | | | | | | | 79 | | | | | | | | | 129 | | | | | | | |
| | 30 | | | | | | | | | 80 | | | | | | | | | 130 | | | | | | | |
| | 31 | | | | | | | | | 81 | | | | | | | | | 131 | | | | | | | |
| | 32 | | | | | | | | | 82 | | | | | | | | | 132 | | | | | | | |
| | 33 | | | | | | | | | 83 | | | | | | | | | 133 | | | | | | | |
| | 34 | | | | | | | | | 84 | | | | | | | | | 134 | | | | | | | |
| | 35 | | | | | | | | | 85 | | | | | | | | | 135 | | | | | | | |
| | 36 | | | | | | | | | 86 | | | | | | | | | 136 | | | | | | | |
| | 37 | | | | | | | | | 87 | | | | | | | | | 137 | | | | | | | |
| | 38 | | | | | | | | | 88 | | | | | | | | | 138 | | | | | | | |
| | 39 | | | | | | | | | 89 | | | | | | | | | 139 | | | | | | | |
| | 40 | | | | | | | | | 90 | | | | | | | | | 140 | | | | | | | |
| | 41 | | | | | | | | | 91 | | | | | | | | | 141 | | | | | | | |
| | 42 | | | | | | | | | 92 | | | | | | | | | 142 | | | | | | | |
| | 43 | | | | | | | | | 93 | | | | | | | | | 143 | | | | | | | |
| | 44 | | | | | | | | | 94 | | | | | | | | | 144 | | | | | | | |
| | 45 | | | | | | | | | 95 | | | | | | | | | 145 | | | | | | | |
| | 46 | | | | | | | | | 96 | | | | | | | | | 146 | | | | | | | |
| | 47 | | | | | | | | | 97 | | | | | | | | | 147 | | | | | | | |
| | 48 | | | | | | | | | 98 | | | | | | | | | 148 | | | | | | | |
| | 49 | | | | | | | | | 99 | | | | | | | | | 149 | | | | | | | |
| | 50 | | | | | | | | | 100 | | | | | | | | | 150 | | | | | | | |